Good morning, counsel. Good morning. May it please the Court, my name is Eric Manj. I represent the appellant, Norma Manjarrez, in this matter. And with the Court's permission, I'd like to reserve two minutes for rebuttal. All right. Your Honor, this is a case about accountability and how this Court, in this case and in future cases, should measure that accountability for the government's, to be frank about it, bad behavior in presuming and preserving evidence. Now, I'd just like to state with that provision that I understand that Ms. McCown, the attorney for the government, was not the trial counsel in this case. I do want to make that clear. But regardless, I believe that the government's conduct in this case clearly amounted to bad faith. And as such, the proper remedy in this case should have been dismissal of the indictment, rather than simply the remedy that was chosen, which was an adverse instruction to the jury, and that that instruction did not correct any sort of error, negligent error that was made, and, in fact, bad faith decisions that were made by the government in this case. And I would further add, Your Honor, that the record that we have in this particular case is unusually good, the factual record, in terms of the consequences to the defendant in this case and the appellant, rather, the defendant appellant, and how it, in fact, ultimately impacted her trial. Because right at the beginning of the case, on June 16th, excuse me, June 26th, 2015, when the appellant was arrested, her phone was seized. The phone of the material witness was seized as well. And the defendant in this case did not learn of the destruction. Ms. Monjarez did not, and through her counsel, did not learn of the destruction of that cell phone until three months after it actually happened, at which time the government notified her of the circumstances of the destruction. Now, any sort of... All of these facts... Yes. Let me stop you for a minute. All of these facts were brought out in a hearing? That is correct. Before the magistrate judge's hearing. They were brought out in front of the magistrate judge, and they were further brought out and elaborated, elucidated. The consequences of those errors were brought out at the trial, in which case the government did not simply argue that Ms. Monjarez was calling someone on her cell phone and could have, and that person in some sort of argument. But, in fact, the government in this case actually brought out an exhibit showing the number of calls and confronted the defendant while she was under cross-examination, to the effect of, these 23 calls, can you justify where these calls were making them? And, in fact, giving the impression to the jury that the facts behind these calls were of... that showed her guilt in it, to the effect of, who could she possibly be calling this many times during this period of time? Your Honor. Right. Well, let me go back to the... She was notified as soon as the government learned that the cell phone had been destroyed. The cell phone was where? In storage someplace? The cell phone, as well as the cell phone, the Nokia, possessed by Mr. Lopez, the material witness, was in government custody at that time and continued to be, which is fully routine practice for cases in this district, many of which I have represented defendants myself. I was not the trial judge in this case. But that's fully typical practice in this particular case. And I would stress, again, as I pointed out in... It is practice to store the... Yes, it is practice to store the... So this is not a classic case where the policeman takes it and stomps on it on the middle of the highway. No, the circumstances are not that. This was handled according to routine procedures. Correct. But, again, as I think the district court neglected to find in this particular case, there was, in fact, bad faith on the practice of the agents and the government in this case because they knew right from the very day on June 26, 2015, that Ms. Monjarez was arrested, that this phone, this cell phone, was significant in terms of her defense because of what she told them in an hour-long interview, which is part of the record here, that she was... She denied any culpability in this offense. She told the agents that she was going... She was taking her grandson to be delivered to her daughter and that she was, at the time, going to pick up cake ingredients. All of these things are on the record. All of these things were known to the agents. So... Was some of this information known to you? For example, did you know that your client had property that was taken from her at the time of the arrest? Indeed... Well, again, to correct Your Honor... You weren't the trial counsel. I was not the trial counsel, but it was... Oh, I'm sorry. Yes, it was known by trial counsel that the phone was taken, and... Well, would it normally be something that he would ask to inspect as part of the defense? Yes, indeed, it would be something that is part of the defense of such a... Well, why wouldn't he ask to at least inspect it so that he would know whether there were any incriminating evidence in that cell phone? Well, the reason, Your Honor, is that in terms of timing, there's no reason that Mr. — that the trial counsel in this case would have had any reason to believe that the phone would have been destroyed in this case as the government conceded at trial and at the hearing, ultimately, this was a mistake. This was an error by the government. This is not typical procedure, and this is something that the agents did. Well, what was not typical procedure? The destruction? The destruction of the defendant's cell phone. That cell phone would have been preserved until the end of the trial. It is not typical procedure to destroy a phone. That may be, but there was a finding that it was not in bad faith. And I just don't see, you know, it's in storage and something happens to it, and it's not there anymore. I don't know what you do with that. I would point to the knowledge. You get an instruction. The specific, yes. And again, an instruction was given at the time, but the question is the knowledge of the agents at the time the phone was destroyed. And it is very clear, based on everything that we have in the record of this case, that those agents knew about the significance of the cell phone for two specific reasons. Number one, every agent knows and every attorney knows in 2018 the usefulness and many-faceted usefulness of a cell phone in any criminal case. And secondly, the specifics of their knowledge was clear to the government at that time, and there is absolutely no reason why that phone should have been destroyed at that time. And their failure to prevent the destruction of that cell phone through any sort of error and through any sort of behavior by the Border Patrol agents amounts to bad faith on the part of the government. This is similar to Zaragoza-Morera. You're saying basically that the very existence of the cell phone should have alerted the government to its importance. Is that what you're saying? Yes. Why didn't it do the same thing for counsel for the defense? Indeed, the significance of the cell phone was known to the government for both the reasons that I stated. That wasn't my question, but let me just cut to the chase. Specifically, what facts filed by the district court point to bad faith? Because that's what you have to prove. Well, I would point to the record. Everything that was known to the district court judge at the time should have pointed the district court judge to making a determination that there was bad faith. Do you have any cases from which we can infer bad faith from the facts that have been filed in this case? No. There's no need for this Court to impute bad faith or simply assume that there was bad faith. I would point to the record specifically, and everything that these agents knew at the time of the phone's destruction suggests that there was bad faith in the destruction of the cell phone in allowing it to be destroyed. This wasn't the case. I have a little problem with that. She says that she was calling about cake supplies, and the government inference that the government was drawing was that she was concerned about contacting people because she was smuggling aliens, right? I have a little trouble saying, well, everything there indicates that this was exculpatory. Well, that is correct. Well, as far as the, excuse me, as far as the we are not required under Trumbetta, Youngblood, the Supreme Court's decisions that the specific potentially exculpatory nature of this evidence, but I think the defense counsel in this case did an excellent job of pointing out the many different reasons and many different ways in which this specific text message, these text messages would have been used. Right. I agree with you. It did a very good job and got an instruction that said you've heard testimony the government destroyed, caused to be destroyed the cell phone. If you find that the contents of the cell phone would assist you in determining you may infer that the cell phone's contents are contrary to the government's position. What's wrong with it? Isn't that fair? The problem with that is that that instruction is no substitute for the loss of evidence that would have allowed the defense in this case to rebut the inferences that were clearly made and intentionally made by government counsel in this case by asking the defendant repeatedly, where do these 23 calls come from, how can you rebut this? And even if another witness had been called to supplement the defense's case, he would not appear. That in itself is no substitute for the ability of the defense to show the messages or lack of incriminating messages from the cell phone at trial or any sort of messages to that effect. Thank you. All right, counsel. We'll give you a minute for rebuttal. You exceeded your time. Thank you. Good morning, Your Honors. My name is Erica McCallum, and I'm an assistant U.S. attorney from the District of Arizona in Tucson. I'm representing the government. I think that the defendant is overlooking a key issue in this case here. He moved for two things. Number one, dismissal of the indictment for violation of due process. He's waived that argument. Whether or not there was bad faith is waived. The magistrate, after conducting an evidentiary hearing, made a ruling or made a recommendation that the motion to dismiss be denied and also recommended that the adverse inference instruction be denied. The district court in docket number 101, that's the excerpt of record page 35 and 36, district court adopted both of those recommendations and denied both motions. But the district court did allow the defendant the right to re-raise only the adverse inference instruction if at trial, and I'm quoting, the evidence demonstrates that the defendant has been, quote-unquote, materially prejudiced by the destruction of her phone. Okay? So, no objection to the R&R. District court says no due process violation, no bad faith. That issue is waived. This court should not entertain it. As for the adverse inference instruction at trial, the district court considered the evidence and said, I think that there has been prejudice with regard to showing whether or not the defendant had another reasonable means of coming up with comparable evidence. In other words, we don't have the text messages, we don't have the voicemails, we don't have information on whether or not phone calls were answered or not. This may raise inferences with the jury that the evidence was incriminating, and the court made a finding, again, there's no bad faith, there's no information that the information was exculpatory, therefore I'm giving that curative instruction. It did. The jury is presumed to follow it. And, therefore, if there was indeed prejudice, it was cured. Counsel, so what case do you base your argument on that there's been a waiver of the argument? That would be the Olano case. The defendant simply didn't, he didn't object to the R&R, and he never re-raised the issue. He never asked for reconsideration. Why wouldn't it be plain error review? I thought our case has said that failure to file objections doesn't automatically waive the ability to challenge conclusions of law. If this court were to consider the issue, as I stated in my answering brief, then I think there's no finding. There's no evidence of plain error because the defendant's substantial rights were not affected and because there was no error. However, I do believe that this was an affirmative waiver of a known right by making the decision not to object to the recommendation. How can an affirmative waiver be evidenced by a failure to object? That's the problem I have with your argument, that affirmative seems to imply that there was some positive step taken rather than a failure to object. Usually if there's an affirmative waiver, it's by way of a stipulation or an agreement verbally. So I'm not really receptive to the idea that a failure to object is an affirmative action. I do think the Yolanos case says that if you don't object to a report and recommendation, it's a waiver. It's deemed a waiver. If, however, again, and I don't want to waste your time to repeat myself, but I do think even if you do apply the plain error standard, the defendant doesn't satisfy it. Sometimes we use the word waiver loosely when we really should have used forfeiture as opposed to waiver. So the fact that a case uses the word waiver isn't necessarily conclusive in my mind as to the legal effect because as the Supreme Court pointed out, that word has been used quite cavalierly in some circumstances. That's true. And in this circuit, you can see it used in different contexts. Right. So if there are no further questions, I would... Judge Torrey, do you have any questions for the government? Yes, I have a question dealing with the cell phone records. Do they show the actual numbers that were dialed and the ones that were made the other way? I'm not sure I understand your question. I believe you're asking if the evidence at trial did look at the phone numbers. I'm asking if the defendant gave permission for you to download his cell phone, so I understand it. I don't believe the defendant gave permission to dial the cell phone numbers. Download. To download, yes. Oh, yes, yes, yes. As part of... Download. As part of... Download. Yes, thank you. As part of the evidence you're hearing, the parties stipulated because the government agreed, yes, we were negligent in destroying the phone, so let's see if we can obtain the information that was on the phone. So the judge, the parties stipulated, the judge ordered, the numbers were obtained, there was evidence at trial that indeed, and again, the defendant initially argued, this is a case, this is a dog that didn't bark case. In other words, what we're... Can you just answer my question because I don't want to take up time unnecessarily. So the telephone numbers that were dialed were on the record? The telephone numbers that were dialed and received were on the record. So it was possible to find out who those phone numbers belonged to? Yes, and the government made it... And this information, was this information available to the defense? It was, and the government did attempt to track down the four key numbers during that time period. Two of them were the defendant's family members. Two of them were anonymous phone numbers. The government was not able to locate the individuals that those numbers were assigned to. However, the defendant certainly had the subpoena power and the numbers and could have tracked down those supposed Kate customers if she had chosen to. Thank you. All right, thank you. If there's no further questions, I would ask you to affirm. All right, thank you, counsel. One minute for rebuttal. Thank you, Your Honors. Just briefly, addressing the subject of waiver, there was no waiver in this case. There was no affirmative waiver in this case. The Jimenez and Buchanan cases make it clear that under the circumstances of this case, the magistrate judge specifically gave leave to the parties to raise this issue again, and those were the words in the report and recommendation. And in fact, the Court did do that. The Court did, in fact, revisit the issue. And the Court, the district court, made specific its findings in that the Court did not find, which I believe the Court clearly erred in doing, that there was bad faith. But the Court, in fact, did find that there was prejudice to the defendant by the loss of the cell phone. So we are not here to argue the point of whether there was prejudice to the defendant. That is clear. That was found by the district court, and we don't we do not contest that contention. Your biggest hurdle is bad faith. That's correct. And we believe that this Court, this case, very closely mirrors that of Zaragoza-Morera, which in many ways, this is even a stronger case for bad faith because that case ended with a plea agreement. And in that case, the defense counsel did not ask for the preservation of the video that was central to that duress defense in that particular case until nearly a year after the case had been pending. Yet the Court, this Court, did find that there was bad faith on the part of the agents who conducted that investigation because they knew about the they had, just like in this case, they conducted an interview with the defendant. And they, in that case, knew precisely the import of that video. Yet they did not preserve it. We have similar circumstances here. All right. Counsel, we understand your argument. Thank you to both counsel. The case, as argued, is submitted for a decision by the Court. Judge Torreo, did you have any final questions for the defense? No, thank you. All right. Thank you. Thank you, counsel. Thank you, Your Honor. The case, as argued, is submitted for a decision by the Court.
judges: Torruella, Schroeder, Rawlinson